**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Andrew LETT, Defendant-Appellant.**

**No. 50569.**

Missouri Court of Appeals,
Eastern District,
Division Eight.

July 29, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 10, 1986.

Joseph A. Fenlon, Clayton, for defendant-appellant.

John Munson Morris, Carrie Diane Francke, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

DOUGLAS W. GREENE, Special Judge.

Andrew Lett was jury-convicted of second degree murder, § 565.021 RSMo Supp. 1984, and armed criminal action, § 571.015 RSMo 1978, and thereafter sentenced, as a persistent offender, to thirty year concurrent prison terms for each of the two offenses.

The facts in evidence most favorable to the state's case are that late in the evening of November 22, 1984, Lett and his cousin, Marshall Jones, had an argument over money Jones owed Lett. Lett brought a .22 caliber sawed-off rifle to the scene of the argument, but gave it to Jones' stepbrother, Patrick Harmon, to hold before any violence occurred. Jones threatened Lett with a knife, and punched him in the face, but had broken off the fight and was moving toward his car when Lett took the rifle from Harmon and shot Jones. Jones died from the loss of blood caused by the bullet wound.

■ Lett's first point relied on in his appeal is that the trial court erred in failing to direct a verdict of acquittal at the close of all the evidence because there· was no evidence that he intended to kill Jones, or from which an intent to kill could be presumed, and that "there were intervening factors which may have proximately caused" Jones' death.

The record indicates that Lett shot Jones in the right arm from a distance of no more than three feet. The bullet went through Jones' right arm, his right fifth rib, upward through his right lung, and finally lodged in the upper left side of his neck after lacerating the jugular vein. After the shooting, Harmon and two companions placed Jones in a car to transport him to a hospital. En route, they were stopped by the police because they were speeding. An ambulance was called and arrived, but refused to transport Jones because the shooting occurred outside the ambulance company's territorial jurisdiction. A second ambulance was summoned and took Jones to the hospital, where he died from loss of blood. The pathologist who conducted the autopsy was unable to say whether the delay in getting Jones to the hospital was a contributing cause of his death.

Lett's attorney argues that these facts do not prove a specific intent to kill, which he says was necessary in order to convict him of second degree murder. The willful, premeditated killing of a human being with malice aforethought constitutes murder in the second degree. *State v. McGowan*, 621 S.W.2d 557, 559 (Mo.App.1981). An essential element of proof in a second degree murder case is evidence of an intent to kill or to cause serious bodily harm. *State v. Kincade*, 677 S.W.2d 361, 364 (Mo.App. 1984). Such intent may be inferred where, under the circumstances, death may be reasonably expected to follow the assault on the victim, irrespective of any subjective desire on the part of the assailant to kill his victim. *State v. Powell*, 630 S.W.2d 168, 170 (Mo.App.1982). When a person intentionally fires a deadly weapon into the body of another at close range, and that person dies as a result of the wound, the assailant is presumed to have intended to cause the death. *State v. Strickland*, 609 S.W.2d 392, 394 (Mo. banc 1980); *State v. Ward*, 569 S.W.2d 341, 343 (Mo.App.1978).

Lett argues that since he fired the shot into Jones' upper arm, which he says was a "non-vital" area, and Jones' transportation to the hospital was delayed, there was no evidence that he intended to kill Jones. Similar arguments were rejected in *State v. Williams*, 652 S.W.2d 102, 114–115 (Mo.

banc 1983), *State v. Bolder*, 635 S.W.2d 673, 679–680 (Mo. banc 1982), *cert. denied* 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983); and *Kincade, supra,* at 364. The point has no merit.

■ Lett's next allegation of error is that he was entitled to a directed verdict of acquittal at the close of all of the evidence because "the state's evidence conclusively established that appellant acted in self-defense in that the victim had a dangerous weapon and was the original aggressor, the shooting occurred within a very short time thereafter, and there was no evidence either that hostilities had ceased or that sufficient time had elapsed for appellant to recognize that hostilities had ceased." Lett's self-defense theory was that after he was struck in the face, Jones immediately moved toward his car, and that Lett, believing Jones was going for a gun, ran up the street to where Harmon was standing, grabbed the rifle from Harmon, returned to the car and shot Jones.

There was no evidence that Jones had a gun in his car at the time of the shooting, or that Jones had said he had a gun in his car. Further, there was evidence that Lett was armed with a rifle when he came to the crime scene and that he was angry with Jones because of a dispute over money. A proper self-defense instruction was given at trial. That defense was rejected by the jury.

If the state's evidence is undisputed or uncontradicted, and establishes conclusively that a person killed another in self-defense, then the issue should not be submitted to the jury, but where, as here, the evidence is not free of dispute, the issue is a jury question. *State v. Grier*, 609 S.W.2d 201, 203 (Mo.App.1980); *State v. Meany*, 563 S.W.2d 117, 120 (Mo.App.1978). The only evidence in the case supporting the defense of justifiable homicide by reason of self-defense was the self-serving testimony of Lett. The issue was for the jury to decide. The point has no merit.

■ Lett next urges that the trial court erred in excluding evidence that the autopsy revealed that Jones had phencyclidine (PCP) in his blood, urine and bile, and in excluding testimony as to the effect that levels of PCP found in Jones' system would have had on his behavior. It is appellant's theory that such testimony would have shown that the anger and hyperactive behavior Jones displayed before he was shot was caused by the PCP.

Lett did not offer any expert testimony on this issue, but made an offer of proof, out of the presence of the jury, of the testimony of Dr. Mary Case who performed the autopsy. She testified that PCP is an illegal substance and is an amphetamine like material that stimulates behavior. She also testified that she could not accurately state what affect, if any, the levels of PCP found in Jones' body had on his behavior.

Absent clear abuse, an appellate court will not interfere with a trial court's ruling on whether certain evidence should be excluded or admitted. *State v. Inman*, 673 S.W.2d 483, 486 (Mo.App.1984). While the excluded testimony might have affected Jones' reputation in the jury's eyes, it was not admissible for that purpose. *See State v. Terry*, 582 S.W.2d 337, 341 (Mo.App. 1979). The trial court did not abuse its discretion in excluding the testimony because of its dubious relevancy to the self-defense issue.

■ In his final point relied on, Lett contends the trial court erred in failing to instruct on the lesser-included offense of manslaughter. No manslaughter instruction was requested or given at trial. In fact, during a conference at which the proposed instructions were discussed, the prosecutor stated that defense counsel, who is the same lawyer who is handling this appeal, was waiving any requested instruction on manslaughter. Defense counsel replied, "[t]hat's correct."

On appeal, defense counsel contends the manslaughter instruction was mandated, regardless of his agreement at the conference, because MAI–CR 15.00.d(f) "requires that the conventional manslaughter instruction must be automatically given

when instructing on murder in the second degree."

While such rule, as enunciated in *State v. Stapleton*, 518 S.W.2d 292, 300 (Mo. banc 1975), formerly existed, it no longer does. The Missouri legislature has enacted § 565.025, RSMo Supp.1984, the effective date of which was October 1, 1984. It applies to this case, which was tried in July of 1985. The statute directs that § 556.-046, RSMo 1978, shall control whether lesser-included offenses must be submitted in homicide cases. Section 556.046, in turn, provides that the court is not obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged *and convicting him of the included offense.*

Here, the evidence shows a basis for acquittal on the offense charged. That basis, self-defense, was, of course, rejected by the jury. The evidence does not, however, provide a basis for convicting Lett of the lesser-included offense of manslaughter. This is not a manslaughter case.

In order for an intentional homicide to be classified as manslaughter, there must be evidence of a sudden provocation which renders the mind of the actor incapable of reflection and obscures his capacity to reason to such an extent as to indicate an absence of malice and premeditation, which are the elements of second degree murder. *Young v. State*, 547 S.W.2d 146, 148 (Mo. App.1977). There is no such evidence here. Jones, after punching Lett in the face, walked away. His back was turned to Lett. Lett went in the opposite direction, retrieved his rifle, which Harmon was holding, retraced his steps, pointed his rifle at Jones, and fired. These facts do not provide a basis for a manslaughter instruction.

There was absolutely nothing in evidence, or in any argument of Lett's trial and appellate attorney, that even remotely suggests that Lett shot Jones because of a sudden provocation capable of obscuring reason or rendering his mind incapable of reflection.

Lett's entire trial strategy was a gamble that the jury would believe he acted in self-defense. He lost.

Judgment affirmed.

KAROHL, P.J., and GARY M. GAERTNER, J., concur.