**Donald JONES, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 62937.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 28, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 4, 1993.

Application to Transfer Denied
Dec. 21, 1993.

David C. Hemingway, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant pleaded guilty to two counts of second degree murder and two counts of armed criminal action. The trial court sentenced Defendant to consecutive life sentences for the murder charges and concurrent life sentences for the armed criminal action charges. Following an evidentiary hearing, the motion court subsequently denied Defendant's Rule 24.035 motion for postconviction relief. Defendant appeals.

On November 1, 1990, Defendant returned home from work to find two boys, Arlando Stamps (age eighteen) and Laron Washington (age nineteen), in his house with his two daughters. At the time, Defendant's daughters were of the ages sixteen and thirteen. Before Defendant left for work, he had warned his daughters about letting the two boys in the house. Defendant's thirteen-year-old daughter had a baby, of whom Arlando Stamps was the father. When Defendant came home, Stamps and Washington hid under the daughters' bed. Defendant, searching the room, discovered the boys under the bed and fired several shots at them. Stamps died under the bed. Washington, who was injured, got out from underneath the bed and ran from the room. He collapsed in the hallway. Defendant reloaded his weapon, followed Washington, and shot him several more times. Defendant called the police and turned himself over to them. A subsequent police investigation revealed a long history of dispute between Defendant and the two boys concerning Defendant's daughters.

On appeal, our review of the motion court's decision is limited to determining

whether its findings of fact and conclusions of law are clearly erroneous. Rule 24.035(j). Therefore, to overturn the motion court's denial, we must be left with a firm and definite impression a mistake has been made after reviewing the full record. *Tipton v. State*, 838 S.W.2d 138, 139[1] (Mo.App.1992).

On appeal, Defendant first argues his guilty plea was involuntary because he was under the misapprehension he would be sentenced to twenty years each for the murders and three years for each armed criminal action charge. Defendant points to the testimony of his trial attorney in which his attorney stated he discussed possible parole for the life sentences in twenty years and for armed criminal action after three years. Defendant contends this discussion confused him so that he believed the plea agreement was for those times.

To determine whether Defendant's plea was voluntary, the test is whether a reasonable basis exists for Defendant's mistaken belief. *Scruggs v. State*, 839 S.W.2d 51, 52–53[4] (Mo.App.1992). The motion court found Defendant could not reasonably be mistaken about the plea recommendation. We agree. While Defendant's attorney did discuss possible parole, he also testified he told Defendant the recommendation for the murders was life plus life. He further told Defendant the recommendation for the armed criminal action counts was two concurrent life sentences. He stated he believed the State's recommendation was clear to Defendant. In addition, at the beginning of the plea hearing, the State clearly stated its recommendation. The motion court was not required to believe Defendant's claim he was under a misapprehension. *See, Gmerek v. State*, 781 S.W.2d 575, 577[1] (Mo.App.1989). Point denied.

In Point II, Defendant argues the motion court clearly erred in failing to issue findings of fact and conclusions of law on his claim of ineffective assistance of counsel because his attorney failed to discuss the possible defenses of defense of another and defense of home. While Defendant included this claim in his Rule 24.035 motion, he failed to present any evidence of it at his hearing. The motion court has not erred in failing to issue findings on claims not supported by substantive evidence. *State v. Hamilton*, 817 S.W.2d 8, 11–12[14] (Mo.App.1991). Point denied.

In Point III, Defendant raises two questions concerning his sentence. First, Defendant argues his due process rights were violated by the trial court's failure to consider strong mitigating circumstances as required by § 557.036.1, RSMo Supp.1992. Second, Defendant alleges his punishment is excessive to the extent it violates the Eighth Amendment ban on cruel and unusual punishment.

Section 557.036.1 requires the trial court to consider the "nature and circumstances of the offense and the history and character of the. defendant" in deciding the appropriate sentences. The record shows the trial court did this. After Defendant's plea, the trial court delayed sentencing for about three months for a presentence investigation. The trial judge stated, "I am going to review your complete history. I am requesting the most experienced probation officer they can give." He further stated, "I want a full and complete study, Jones. I am doing this so you will have. every benefit of any chance that you can have." At sentencing, the judge indicated he had received an extensive probation report and a report from Defendant's attorney. Even so, the judge sentenced Defendant to the recommended sentences. The judge averred he did so because Defendant reloaded and shot Washington in the hallway.

Nothing in the record indicates the trial court abused its discretion. *State v. Mills*, 671 S.W.2d 437, 439[2] (Mo.App.1984). While Defendant may have warned the boys to stay away from his daughters, the evidence recited indicates Defendant first shot at them under a bed where they were hiding from Defendant. Defendant then pursued Washington into the hallway, reloaded, and shot him several more times. Defendant's two daughters told the police Washington begged for his life just before Defendant shot him. In addition, the sentences prescribed were within the statutory limits imposed by law. *See, §§ 565.021, 571.015, 558.011.1, RSMo 1986; Allen v. State*, 582 S.W.2d 361, 362[2] (Mo.App.1979).

Nor is Defendant's punishment so excessive as to violate the ban upon cruel and

unusual punishment. Where the sentence is within the statutory limits, an offense is not cruel and unusual because of its duration " 'unless so disproportionate to the offense committed so as to shock the moral sense of all reasonable [persons] as to what is right and proper under the circumstances.' " *State v. Manis,* 614 S.W.2d 771, 773[4] (Mo. App.1981), *quoting, State v. Johnson,* 549 S.W.2d 348, 352 (Mo.App.1977), et al. *See also, State v. Bell,* 719 S.W.2d 763, 766[6] (Mo. banc 1986). While the victims may not have been completely innocent in this matter, we cannot say the trial court's sentence was disproportionate to the crimes committed. Defendant's complete disregard for human life by shooting at the two boys under the bed, then reloading to pursue and shoot down Washington in the hallway after he begged for his life warrant the life sentences. Point denied.

Judgment affirmed.

CRANDALL, P.J., and REINHARD, J., concur.